IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REBECCA GRIMES, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | No. 3:20-cv-01548-M(BT) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Rebecca Grimes, a federal prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. For the following reasons, the Court should dismiss the petition or, in the alternative, deny it.

I.

On June 1, 2016, Grimes was arrested on a federal warrant in the Northern District of Texas based on charges of distribution of a controlled substance, and she was detained. App. 4 (ECF No. 9) (citing Attach. 1). Five days later, on June 6, 2016, she was released from federal custody on a personal recognizance bond. *Id.* (citing Attach. 2). As a condition of her bond, the Court ordered Grimes to participate in the home detention program with electronic location monitoring. *Id.* On August 26, 2016, the Court removed the location monitoring condition because Grimes suffered an injury. *Id.*

On September 13, 2017, the District Court sentenced Grimes to 108 months' imprisonment and set January 2, 2018 as the date for her to self-surrender to the institution designated by the Bureau of Prisons (BOP). *Id.* (citing Attach. 3). Later, the District Court extended Grimes's self-surrender date to February 27, 2018. *Id.* (citing Attach. 4).

Grimes voluntarily surrendered at Federal Medical Center (FMC) Carswell, as ordered. *Id.* The BOP determined that her sentence commenced on February 27, 2018, the date of her surrender, and gave her credit for the time she spent in custody from June 1, 2016 to June 6, 2016, prior to being released on bond. *Id.* If Grimes receives all the projected good conduct time she is entitled to receive, she will be released from BOP custody on October 22, 2025. *Id.* (citing Attach. 5).

In her petition, Grimes argues that she is entitled to 20 months' additional credit for the time she spent on home detention. Pet. 5, 7 (ECF No. 5). She asserts that she successfully completed 20 months of "pretrial confinement" without incident, and pretrial confinement is a form of incarceration. *Id.*

## II.

"The PLRA [] does not apply to section 2241 proceedings." *Davis v. Fechtel,* 150 F.3d 486, 490 (5th Cir. 1998). However, as a general rule, a petitioner seeking relief under § 2241 must exhaust her administrative remedies prior to presenting her claims in federal court. *Fuller v. Rich,* 11

2

F.3d 61, 62 (5th Cir. 1994) (per curiam); *see also Brooks v. Carr*, 2021 WL 4197205, at *2 (N.D. Tex. Sept. 15, 2021) (citing *Fuller*, 11 F.3d at 62). Section 2241 does not specifically contain an exhaustion requirement, but it is well established that a federal prisoner must exhaust all administrative remedies prior to filing a federal habeas petition under § 2241. *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) ("[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies.") (citing *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993)); *see also United States v. Cleto,* 956 F.2d 83, 84 (5th Cir. 1992) ("[E]xhaustion of administrative remedies is a prerequisite to filing a section 2241 petition."). Exhaustion under § 2241 requires that a petitioner "fairly present all of [her] claims" through the proper channels before pursing federal habeas relief. *Dickerson v. Louisiana*, 816 F.2d 220, 228 (5th Cir. 1987) (addressing § 2241 filed by a state pretrial detainee). Exceptions to the exhaustion requirement apply only in "extraordinary circumstances" when administrative remedies "are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action," and "[the petitioner] bears the burden of demonstrating the futility of administrative review." *Fuller*, 11 F.3d at 62 (citation omitted). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its expertise, and to

3

correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972).

The BOP has established an Administrative Remedy Program whereby inmates can "seek formal review of an issue which relates to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Initially, a prisoner must attempt to informally resolve the complaint with staff. *Id.* § 542.13(a). If informal attempts are not successful, the prisoner must submit a Request for Administrative Remedy to the Warden. *Id.* § 542.14. If the prisoner is not satisfied with the Warden's response, she may appeal to the appropriate Regional Director. *Id.* § 542.15(a). Finally, if the prisoner is still not satisfied, she may appeal to the General Counsel. *Id.*

Here, Grimes essentially concedes that she failed to exhaust her administrative remedies. Specifically, she claims, "The Bureau of Prisons is maintaining a modified lockdown due to the National Health Crisis our Nation has faced due to COVID-19. Therefore, I am requesting that you waive the typical Administrative Remedy and file straight through the court." Pet. 2 (ECF No. 5). However, Grimes does not explain why she failed to attempt to exhaust her administrative remedies prior to the BOP instituting modified operations on March 13, 2020 due to the COVID-19

4

pandemic.[1] Moreover, the Government represents that the BOP continues to process the administrative remedies filed during its modified operations. Resp. 4 (ECF No. 8). And there is no evidence to the contrary before the Court. Grimes's administrative remedy history shows that she has not filed any administrative remedies during her period of incarceration with the BOP. App. 18 (ECF No. 9). In sum, Grimes failed to exhaust her administrative remedies, and her petition should be dismissed.

In the alternative, Grimes's sole claim fails on the merits. A federal district court lacks authority to calculate an inmate's time credits. *See* 18 U.S.C. § 3585(b) (providing that the BOP may grant credit towards a term of imprisonment if a defendant has been detained "prior to the date the sentence commences" and the time spent in custody "has not been credited against another sentence"). Only the Attorney General, through the BOP, may compute a prisoner's federal sentence. *United States v. Wilson*, 503 U.S. 329, 334-35 (1992); *see also United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992) ("[C]redit awards are to be made by the Attorney General, through the [BOP], after sentencing."). "The BOP—as opposed to the federal courts—is the entity authorized to determine where a federal

---

[1] *See* https://justiceadvocacygroupllc.com/wp-content/uploads/2020/03/BOP-Covid-19-Virus-Modified-Operations-Plan-03-2020.pdf (last visited Dec. 21, 2021) (On March 13, 2020, in response to the COVID-19 pandemic, the BOP first responded.).

sentence will be served, when it begins, and, in certain respects, how long it will last." *United States v. Cibrian*, 374 F. App'x 524, 529 (5th Cir. 2010) (per curiam) (emphases omitted) (citing 18 U.S.C. § 3621). The BOP calculates a prisoner's sentence and determines what credit, if any, will be awarded for time spent in custody prior to the start of the federal sentence. *See Wilson*, 503 U.S. at 334, 337.

When the BOP calculates a sentence, it first determines the date the sentence commenced and then it determines whether the inmate is entitled to any credit for time spent in detention prior to the commencement of her sentence. "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). A defendant is given credit for any time she spent in official detention prior to the commencement of her sentence. *Id.* § 3585(b).

Here, Grimes's federal sentence commenced on February 27, 2018, the date she voluntarily surrendered at FMC Carswell to begin serving her sentence. She is therefore not entitled to credit for the time between June 6, 2016 and February 27, 2018, time during which she was released on a personal recognizance bond while awaiting sentencing and surrender. During that time, she was not in custody and therefore not in "official detention." *See Reno v. Koray*, 515 U.S. 50, 63 (1995) ("Unlike defendants

6

'released' on bail, defendants who are 'detained' or 'sentenced' always remain subject to the control of the [BOP].") (emphasis omitted); *Siebert v. Chandler*, 571 F. App'x 328, 328 (5th Cir. 2014) (per curiam) (finding that petitioner's argument that he was entitled to credit toward his sentence for time spent in home confinement was meritless because he was not in "official detention" as it is defined under § 3585(b)) (citing *Reno*, 515 U.S. at 57-58). Although the Court placed restrictions on Grimes between June 6, 2016 and February 27, 2018, she was not under the authority of the BOP during this time that she was at home. She received prior custody credit for June 1, 2016, the day she was arrested, through June 6, 2016, the day she was released on bond. She did not go back into custody until February 27, 2018, when she surrendered at FMC Carswell to serve her sentence. Grimes received credit for the time during which she was in official detention prior to her voluntary surrender on February 27, 2018. Consequently, the BOP properly awarded Grimes the prior custody credit to which she is entitled, and her petition should be denied.

### III.

For the foregoing reasons, the Court should dismiss Grimes's § 2241 petition or, in the alternative, deny it.

Signed December 30, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).